UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CELIA VALDEZ, *et al.*,

        Plaintiffs,

v.

MARY HERRERA, *et al.*,

        Defendants.

No. CV-09-668 JCH/DJS

**DEFENDANT HSD'S REPLY TO PLAINTIFF'S OPPOSITION TO
HSD'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW GARY K. KING, Attorney General of New Mexico, by Elaine P. Lujan, Assistant Attorney General, on behalf of Defendants Pamela S. Hyde, Fred Sandoval, and Carolyn Ingram of the New Mexico Human Services Department (collectively "HSD") in the above-entitled action and submits this Reply to Plaintiff's Opposition to Defendant HSD's Motion for Summary Judgment and Supporting Memorandum of Law ("Reply").

**I.    INTRODUCTION**

In its Summary Judgment Motion, HSD has laid out its policy, procedures, and practices under the NVRA including those in place when this lawsuit was filed, as well as supplemental measures it has taken recently to ensure continued compliance with the NVRA. In other words, HSD has "put it all out on the table." The only question that remains is whether its policy, procedures, and practices at the time this lawsuit was filed and as recently supplemented, are

1

sufficient to meet its obligations under the NVRA, which is without a doubt, a *legal* question. In her forty-eight page Response,[1] Plaintiff has confused the real issues in this case, mischaracterized certain facts, and creatively attempted to disguise legal issues as factual ones. In any event, a close reading of Plaintiff's response bolsters the fact that the only question in this case is a legal one. And the uncontested facts, enumerated in HSD's Motion for Summary Judgment, confirm that HSD is in compliance with its obligations under Section 7 of the NVRA.

## II.   ARGUMENT

### a.  Plaintiff Has Failed to Identify a Genuine Issue of Material Fact and the Only Issue Remaining is a Legal One

Plaintiff has not met her burden in identifying a genuine issue of material fact. The Controverting and Separate Statements of Fact in Support of Plaintiff's Response to Defendant HSD's Motion for Summary Judgment ("PSOF"), [Doc. 88-1] attached and filed as an exhibit to her Response should not be considered for the reasons specified in HSD's Motion to Strike, which is concurrently being filed with this Reply. Due to the astounding length of the PSOF, HSD is not able to address all of Plaintiff's alleged factual disputes, nor should it have to. Suffice it to say, for the time being, that many of the factual assertions in the PSOF are immaterial, taken out of context, and grossly misleading. One example of such deceitfulness is Plaintiff's assertion of the following fact: "When Cindy Salazar, Regional Operations Manager for Region 5, was a caseworker she visited hospitals to assist patients in applying for Medicaid,

---

[1] HSD is concurrently filing a Motion to Strike Plaintiff's Response [Doc. 88] for grossly exceeding the twenty-four (24) page limit for a response. *See* D.N.M.LR-Civ. 7.5.  HSD is filing this Reply in good faith as it has met its deadline to file a reply.  However, in filing this Reply, HSD in no way admits that it has not been prejudiced by the forty-eight page Response submitted by Plaintiff.  The net result of such a voluminous pleading is to confuse and distract the Court from the real issues in this case.  As such and as further detailed in HSD's Motion to Strike, Plaintiff's Reply should be stricken all together, or at the very least, the pages in excess of the twenty-four page limit should be stricken.

but did not bring voter registration forms with her." [Doc. 88-1 at par. 60] The information that is conveniently left out is that Ms. Salazar testified that she visited the hospitals as a caseworker up until 1993. [Doc. 88-10, Plaintiff's Ex. 3 (part 1) at 19-20, 25-26] Thus, her practice of not taking voter registration forms to the hospitals was sixteen years before the filing of this lawsuit and two years before the NVRA became effective in New Mexico. National Voter Registration Act of 1993, Pub. L. No. 103-31, § 13, 107 Stat. 89.

Aside from the unreliable factual disputes alleged in Plaintiff's PSOF, in the body of her actual Response, Plaintiff continues to mischaracterize factual issues. Some of the issues she identifies as factual in nature are in reality, legal issues. Still, other facts and their materiality are misrepresented. In light of such discrepancies, it is clear that Plaintiff has failed to identify any material factual issues, and therefore the only issue that remains is whether HSD's policies and procedures, at the time the lawsuit was filed, and as recently supplemented, are consistent with the NVRA. At the heart of this legal issue is whether HSD's current and longstanding practice of utilizing the "declination provision," which asks applicants if they would like to register to vote, and receiving their answers, before providing a voter registration application, is consistent with Section 7 of the NVRA.

### i. Plaintiff Disguises Legal Issues As Factual Issues

Plaintiff contends that "HSD's own internal reports demonstrate that the corrective actions undertaken [by HSD] have been largely ineffective," [Doc. 88 at 3] and that "[m]aterial fact issues exist concerning the sustainability and effectiveness of the new remedial measures that preclude entry of summary judgment in Defendant Hyde's favor [Doc. 88 at 5]. In essence, Plaintiff is conceding that what she terms "new remedial measures," are not in dispute. Rather,

3

Plaintiff is questioning the "effectiveness" and "sustainability" of those measures, or in other words, whether the new measures are compliant with Section 7 of the NVRA. Despite Plaintiff's characterization of this question as a factual one, it is by definition, a legal question.

The new measures HSD has recently taken to bolster its NVRA program – increasing statewide employee NVRA training, including the NVRA declination provision on every application for assistance, and integrating substantial NVRA compliance into HSD's management evaluations, speak for themselves. Plaintiff has not articulated how measures such as increasing training, ensuring every applicant receives the declination, and providing greater compliance review are ineffective or unsustainable.

To the contrary, the aim of these measures is to ensure continued compliance with the NVRA. There is no argument that increasing NVRA training to every six months is beneficial in ensuring future compliance. Including the declination provision on every application for assistance has immeasurable benefits. It ensures that every applicant, including applicants for recertification and renewal, receive the statutorily mandated declination provision. The updated version of the declination provision contains a signatory box and thus provides a written record that an applicant was in fact offered the opportunity to register to vote. In this capacity, it ties in to HSD's monitoring of NVRA compliance. Previously, management evaluations only included a review of whether a field office had a voter registration poster displayed in its lobby. Currently, management evaluation reviews have been expanded to include a sampling of applications in order to examine the declination provision and other supporting documentation indicating that the opportunity to register to vote was offered and whether or not the applicant

received a voter registration application.[2]  If a deficiency is found, the manager must respond with a plan for correcting the deficiency, which often includes additional NVRA training for staff.

Overall, the effectiveness of HSD's recent enhancements to its NVRA practices and procedures is best illustrated in the increase in voter registration applications submitted to the county clerks since their implementation.  [Doc. 58, HSD's Ex. 1-O, "voter registration reports"]  Plaintiff contends that HSD is solely relying on the increase in voter registration applications to prove its compliance with Section 7 of the NVRA.  [Doc. 88 at 4-5]  This, however, is incorrect.  While HSD, as well as Plaintiff for that matter, have placed a certain amount of stock in the relevance of those numbers, HSD understands that the numbers alone are not dispositive.  Rather, HSD's policies, procedures, and practices in combination with aggregate totals[3] of such numbers, are the best illustration of HSD's compliance with Section 7 of the NVRA.

### ii.  Plaintiff Mischaracterizes Certain Facts and Their Significance

A reoccurring subject throughout Plaintiff's Response is her contention that HSD did not *produce documents* showing that HSD itself *authored* a voter registration policy prior to January 2008 and that HSD *authored* voter registration training materials prior to March 2010.  In addition, Plaintiff contends that HSD did not produce various types of *records* prior to 2008 including training records, records indicating actual review of voter registration numbers, and others.  One of these contentions is plainly incorrect; while the others are irrelevant as to whether

---

[2] Since the filing of its Motion for Summary Judgment, HSD has provided supplemental discovery to Plaintiff confirming that the additional NVRA review has in fact been included in management evaluations since October 2009.

[3] The significance of what may appear to be a low number of voter registration applications for some offices and small variations in numbers from month to month cannot be understood without taking into consideration a number of factors including the size of the population that the office serves.

HSD was in violation of the NVRA at the time the lawsuit was filed or whether HSD is in violation currently.

As a preliminary matter, allegations dating prior to applicable times of this lawsuit cannot be considered, because HSD did not receive notice of such allegations as required by the NVRA. The notice provision of the NVRA provides:

> A person who is aggrieved by a violation [of the NVRA] may provide written notice of the violation to the chief election official of the State involved.
>
> If the violation is not corrected within 90 days after receipt of a notice . . . or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action . . . for declaratory or injunctive relief with respect to the violation.
>
> If the violation occurred within 30 days before the date of an election for Federal Office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . . .

42 U.S.C. § 1973gg-9(b). This requirement "provide[s] states in violation of the Act an opportunity to attempt compliance before facing litigation. *ACORN v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997). HSD first received notice of an alleged violation on June 12, 2007 [Doc. 1-1, Ex. C to Plaintiffs' Complaint] and subsequently on March 23, 2009.[4] [Doc. 1-1, Ex. A to Plaintiffs' Complaint] Therefore, only relevant and material facts dating back to June 2007, at the very earliest, can be considered.

Aside from the time component, Plaintiff has also mischaracterized the significance of certain facts. For example, it is of no consequence that HSD did not itself "author" a voter registration policy. HSD is required to implement Section 7 of the NVRA. Whether it does this

---

[4] Both of these letters were sent on behalf of the Association of Community Organizations for Reform Now ("ACORN"), who has since been dismissed as a Plaintiff to this lawsuit. It is questionable whether the two notice letters, sent on behalf of ACRON, are sufficient in providing notice to HSD of the current "HSD Plaintiff," Shawna Allers' alleged violations.

6

by "authoring" its own policy, contracting with a third party to establish a policy, borrowing a policy from another state, or as it did in this case, adopting and implementing the NVRA policy "authored" by the Secretary of State's Office ("SOS"), is of no consequence as long as the end result is compliance with the NVRA.  In fact, when HSD issued its NVRA memo in January 2008, it was based, in large part, on the SOS's manual and the manual was also attached to the memo.  [Doc. 58, HSD's Ex. 1-B, "ISD GI 08-01"]

Plaintiff's allegations concerning NVRA training are also irrelevant for the same reasons, but even further, her contentions here are simply incorrect.  Plaintiff goes so far as to contend that HSD's updated training program, which was created in March 2010, is the first training document ever created or utilized by HSD. [Doc. 88 at 13]  Plaintiff is mistaken about this fact. HSD's NVRA memo, issued in January 2008, has served as HSD's key training document since it was issued.  In fact, the memo is attached to HSD's three-week basic training materials that every new employee receives.  HSD has produced to Plaintiff the three-week basic training materials with the NVRA memo attached.  In addition, Ted Roth, HSD's 30(b)(6) deponent, testified that the memo served as HSD's NVRA training material.  Plaintiff may be confused because the memo does not explicitly indicate that it is HSD's key training document.  However, there is ample evidence in deposition testimony and in HSD's document production, to confirm this fact.

### iii.  The Process HSD Utilizes in Distributing Voter Registration Applications is Sanctioned by Section 7 of the NVRA.

Despite Plaintiff's attempts to overwhelm the Court with a twenty-four-page document of factual assertions, confuse factual issues with legal issues, and mischaracterize the materiality of other facts, the only issue in this case is whether HSD's practices and procedures are compliant

7

with the NVRA.  The crux of this legal dispute surrounds the process HSD's uses to distribute voter registration forms to applicants for public assistance.  The analysis in this area is simple, because Section 7 of the NVRA is clear and unambiguous.

The relevant provision of Section 7 requires HSD to distribute a voter registration application with each initial application for public services and with each recertification, renewal, and change of address, unless the applicant, in writing, declines to register to vote.  42 U.S.C. § 1973gg-5(a)(6)(A).  It also requires distribution of a "declination" form or provision.  HSD's practice is and has been to utilize the declination form that is required under Section 7 for its intended purpose – to ask each applicant if they would like to register to vote.  The required language of the declination provision is telling.  Section 7 requires that the declination contain two pertinent provisions: "If you are not registered to voter where you live now, would you like to apply to register to vote here today?" and "IF YOU DO NOT CHECK EITHER BOX YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME." 42 U.S.C § 1973gg-5(a)(6)(B)(iii).

Accordingly, HSD provides a voter registration application to each applicant who answers the first question affirmatively, by checking the appropriate box on the application, or who otherwise indicates they would like to register to vote after being verbally asked the same question.  Under Plaintiff's reading of Section 7, HSD would be required to provide every single applicant for public assistance a voter registration application *and* a declination form.  However, this process renders the declination provision useless.  There is no argument that distribution of the declination provision to every applicant is an absolute requirement. *See* 42 U.S.C § 1973gg-5(a)(6)(B).  Thus, under Plaintiff's reading, HSD would provide the declination provision, which

8

asks the applicant if he or she would like to register to vote, to every applicant, and at the same time provide every applicant with a voter registration application, regardless of his or her response to the question. Thus, the required declination provision would be rendered meaningless.

Plaintiff's reading of the portion of the NVRA that allows applicants to decline to register to vote by not checking either the "yes" or "no" box in the declination provision, is likewise problematic. Plaintiff is correct, Section 7, in relevant part states that "failure to check either box [is] deemed to constitute a declination to register for purposes of subparagraph (C) . . . ." 42 U.S.C. § 1973gg-5(a)(6)(B)(iii). However, Plaintiff's conclusion that the failure of an applicant to check a box in the declination provision means that HSD is not required to provide "the same degree of assistance with regard to the completion of the voter registration form as is provided by the office with regard to the completion of its own forms," is amiss.

Under this reasoning, the following situation could occur: An applicant comes into an HSD office to apply for public assistance. She receives an application for public assistance, a voter registration application, and a declination form. She would like to register to vote and would also like assistance in filling out the voter registration application; however, she failed to check off either box on the declination provision. Under Plaintiff's reasoning, in order to receive assistance in filling out her voter registration application, she must check the "yes" box. Since she has failed to do so, HSD can refuse to assist her.

This outcome is clearly outside the spirit of the NVRA. Section of the NVRA speaks for itself. Section 7 not only authorizes the use of a declination form, it mandates its use. HSD is

9

merely following the procedure for distributing voter registration forms as provided for in the NVRA.

## III.   CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant, HSD, request this Court grant its Motion for Summary Judgment and for such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Elaine P. Lujan  _____
Elaine P. Lujan
Assistant Attorney General
New Mexico Attorney General's Office
PO Drawer 1508
Santa Fe, NM 87504-1508
Phone: (505) 827-6990
Fax: (505) 827-6478

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all parties of record via the CM/ECF case management system for the United Stated District Court for the District of New Mexico this 26th day of July, 2010.

                                                          /s/
                                          Elaine P. Lujan