IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CELIA VLADEZ, GRACIELA
GRAJEDA, SHAWNA ALLERS, and
JESSE RODRIGUEZ,

                              Plaintiffs,

v.                                                      Civ. No.  09-668 JCH/DJS

MARY HERRERA, in her official capacity
as New Mexico Secretary of State;
KATHRYN FALLS, in her official capacity
as Secretary of New Mexico Human
Services Department; FRED SANDOVAL,
in his official capacity as the Director of the
Income Support Division of the New
Mexico Human Services Department;
CAROLYN INGRAM, in her capacity as
the Director of the Medical Assistance
Division of the New Mexico Human
Services Department; DOROTHY
RODRIGUEZ, in her capacity as the
Secretary of the New Mexico Taxation and
Revenue Department; and MICHAEL
SANDOVAL, in his capacity as the
Director of the Motor Vehicle Division of
the New Mexico Taxation and Revenue
Department,
                              Defendants.

### MEMORANDUM OPINION AND ORDER

       This matter comes before the Court on Defendants Kathryn Falls, Fred Sandoval, and

Carolyn Ingram of the New Mexico Human Services Department's (hereinafter "HSD") *Motion*

*for Summary Judgment*, filed May 13, 2010 [Doc. 57],[1] HSD's *Motion to Strike Plaintiff's*

---

[1] At the time the HSD Defendants filed their *Motion for Summary Judgment*, the caption and
memorandum referred to Pamela S. Hyde as Secretary of HSD.  That position is now held by
Kathryn Falls, and the caption has been updated to reflect that change.

*Response in Opposition to HSD's Motion for Summary Judgment*, filed July 26, 2010 [Doc. 91],

Defendant Mary Herrera's *Motion for Summary Judgment*, filed September 7, 2010 [Doc. 111],

Plaintiff Shawna Allers' *Motion for Partial Summary Judgment*, filed September 2, 2010 [Doc.

109], and HSD's *Motion to Extend Time to Respond to Plaintiff's Motion for Partial Summary*

*Judgment*, filed September 27, 2010 [Doc. 119].

The Court having considered the motions, briefs,[2] exhibits, and relevant law, and being

otherwise fully informed, finds that HSD's *Motion for Summary Judgment* [Doc. 57] should be

DENIED, that Defendant Mary Herrera's *Motion for Summary Judgment* [Doc. 111] should be

DENIED, and that Plaintiff's *Motion for Partial Summary Judgment* [Doc. 109] should be

GRANTED.  In addition, the Court finds that HSD's *Motion to Strike* [Doc. 91] should be

DENIED and that its *Motion to Extend Time* [Doc. 119] should be GRANTED.

## BACKGROUND

This litigation concerns alleged past and continuing violations of a portion of the

National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5 (commonly known as

---

[2] HSD filed a *Motion to Strike Plaintiff's Response in Opposition to HSD's Motion for Summary Judgment* [Doc. 91] on July 26, 2010.  HSD's contention is that Plaintiff's entire response to its motion for summary judgment should be struck because Plaintiff filed, as an attachment to her response, a "Controverting and Separate Statement of Facts," rather than incorporating this into her memorandum, thus exceeding the page limitation.  Plaintiff contends that it made its filing in this manner after reviewing the relevant local rules, consulting with local counsel, and consulting with the Court Clerk's Office.  HSD also filed a *Motion to Extend Time to Respond to Plaintiff's Motion for Partial Summary Judgment* [Doc. 119] on September 27, 2010.  HSD filed this motion because it had been operating under the mistaken belief that it had twenty-one days to respond to Plaintiff's motion, when Local Rule 7.4 only provides fourteen days.  Because both Plaintiff's filing and HSD's filing appear to have been based on good-faith interpretations of the rules, and because neither party nor the Court appears to have been greatly inconvenienced, the Court will accept and consider both filings.  Thus, HSD's *Motion to Strike* [Doc. 91] is denied, and its *Motion to Extend Time* [Doc. 119] is granted.

"Section 7"). Section 7 mandates that all state offices which provide public assistance must distribute mail voter registration application forms, assist applicants in completing those forms if requested, accept completed voter registration forms, and transmit those forms to the appropriate state election official.[3] Plaintiff alleges that, for years, New Mexico has failed to provide voter registration services at public assistance offices as required by the NVRA. She contends that, despite recent changes by HSD, HSD remains out of compliance with the NVRA and that its history of non-compliance requires injunctive relief and Court supervision to ensure meaningful relief in the future. HSD contends that it is currently in compliance with its obligations under the NVRA, and that summary judgment in its favor is therefore appropriate. Secretary Herrera contends that her office has different obligations under the NVRA than HSD has, that her office has met those obligations, and that her office cannot be held responsible for any noncompliance by HSD.

## LEGAL STANDARD

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict

---

[3] This litigation initially concerned allegations that the state had violated the requirements of Section 5 of the NVRA as well. Section 5 governs the obligation to offer voter registration services when a person applies for or renews a driver's license or identification card, as overseen by New Mexico's Taxation and Revenue Department ("TRD"). This portion of the litigation has been settled pursuant to a July 1, 2010 settlement agreement. *See* Doc. 84. Thus, the only Plaintiff remaining in the current portion of the litigation is Shawna Allers, and the only remaining Defendants are the HSD Defendants and Secretary Herrera.

3

for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 1572 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In responding to a motion for summary judgment, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324.

## <u>ANALYSIS</u>

A.    <u>Plaintiff's Motion for Partial Summary Judgment</u>

Although Plaintiff's Amended Complaint [Doc. 106] raises issues related to alleged past noncompliance with the NVRA, her motion for partial summary judgment concerns only the issue of an alleged instance of current noncompliance. This issue is well suited for summary judgment, because it concerns solely a question of law, and the parties do not dispute the material facts. *See* HSD's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (hereinafter "HSD Resp.") [Doc. 120] at 3.

1.    <u>The Parties' Positions</u>

Section 7 of the NVRA requires public assistance offices in New Mexico to "distribute [a mail voter registration application] with each application for ... service or assistance, and with each recertification, renewal, or change of address ... unless the applicant, *in writing*, declines to register to vote." 42 U.S.C. § 1973gg-5(a)(6) (emphasis added). HSD does not dispute that New Mexico is subject to the requirements of the NVRA, that HSD is a New Mexico state government agency responsible for providing assistance to qualifying residents of New Mexico,[4] or that New Mexico has designated HSD as a voter registration agency pursuant to the NVRA. *See* Statement of Undisputed Material Facts 1-3, contained in Plaintiff's Motion for Partial Summary Judgment (hereinafter "Pl. Mot.") [Doc. 109] at 4-5. Thus, it is uncontested that the NVRA's Section 7 requirements apply to each transaction conducted in an office overseen by HSD.

HSD's current policy is that voter registration applications are not attached to applications for public assistance, recertification or renewal applications, or change of address forms, and that voter registration applications are not otherwise automatically distributed to public assistance clients. *See id.* at 5, ¶ 5. Instead, HSD includes, as part of most of its benefit application forms, a section that it refers to as a "declination provision." *See* Memorandum in Support of Defendant HSD's Motion for Summary Judgment (hereinafter "HSD Memo.") [Doc.

---

[4] The Income Support Division ("ISD") of HSD is the State agency that administers public assistance throughout the State of New Mexico. Such assistance includes the Supplemental Nutrition Assistance Program ("SNAP") (commonly know as the "Food Stamp" program), Temporary Assistance to Needy Families ("TANF" or "cash assistance"), and medical assistance through numerous categories of Medicaid, among others. While SNAP, TANF, and Medicaid are the larger and main categories of assistance programs, HSD administers approximately 76 different public assistance programs. *See* HSD Resp. at 3-4.

58] at 4.  This provision, which is included as one section in the middle of a multi-page benefits

application asks, *inter alia*, whether a client wishes to "register to vote here today."

The current language of the declination provision on HSD's benefit application forms is

as follows:

> **If YOU are NOT registered to vote where you live now, would you like to register to vote here today?** (Please check one) ☐ YES ☐ NO
>
> **IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.**
>
> **The NATIONAL VOTER REGISTRATION ACT** provides you with the opportunity to register to vote at this location. If you would like help in filling out a voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private. **IMPORTANT: Applying to register or declining to register to vote WILL NOT AFFECT the amount of assistance that you will be provided by this agency.**
>
> Signature                                                                   Date
>
> **CONFIDENTIALITY:** Whether you decide to register to vote or not, your decision will remain confidential.  **IF YOU BELIEVE THAT SOMEONE HAS INTERFERED with your right to register or to decline to register to vote, or your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with the Office of the Secretary of State, 419 State Capital, Santa Fe, NM, 87503, (phone: 1-800-477-3632.)**

HSD Memo. [Doc. 58] at 5 (emphasis in original).  For an indication of what the declination

provision looks like in the context of a standard benefits application form, see Exs. 1-G, 1-H,

and 1-L, attached to HSD Memo.[5]

---

[5] Plaintiff contends that, for many years prior to HSD's finalizing of its current policy in January 2010, HSD did not provide either voter registration forms or forms containing a declination provision to all eligible benefits applicants and clients.  *See* Pl. Mot. at 6 n.4.  Defendant disputes this.  *See* HSD Memo. at 3 n.2.  While such a question of fact may be material to Plaintiff's broader claim for injunctive relief, based on her assertion that HSD's years of noncompliance create a reasonable expectation that its wrongs will be repeated, it is not relevant to Plaintiff's motion for partial summary judgment, which concerns only current policy.

Under HSD's policy, a client is provided with a voter registration application only if the client checks "yes" on the declination provision or verbally indicates that he or she would like to register to vote.  Thus, HSD interprets Section 7 of the NVRA as requiring that voter registration applications be distributed only to those clients who affirmatively state that they desire to register to vote at the same time that they are applying for other benefits.  Consequently, HSD does not provide registration applications to clients who leave the declination provision blank and who do not otherwise respond "yes" if a verbal inquiry regarding registration is made by an HSD employee.  The Court will refer to this interpretation as an "opt in" provision, meaning that voter registration applications should only be provided to those who affirmatively request them.

Plaintiff contends that HSD's interpretation that clients must "opt in" to receive distribution of voter registration forms violates the plain language of Section 7, which requires that all public assistance clients who engage in any of the specified transactions receive a voter registration application unless they decline, "in writing."  Under Plaintiff's interpretation, Section 7 requires that HSD distribute voter registration applications to clients who leave the declination provision blank, in addition to those who check "yes" or give their verbal assent. This interpretation is more in the nature of an "opt out" provision, meaning that registration applications should be given to everyone except those who affirmatively refuse them.

Plaintiff contends that the issue raised by her motion is one of first impression, and the Court has been unable to locate any decision definitively addressing whether the requirement that agencies distribute voter registration applications should be viewed as "opt in" or "opt out." After careful consideration, the Court concludes that the plain language of Section 7, as well as the NVRA's remedial purpose and legislative history, requires that public assistance agencies

provide benefits applicants with a voter registration application unless they explicitly refuse, and

Plaintiff should prevail on her motion for partial summary judgment.

2.    The Statutory Language

Section 7 provides that:

> At each voter registration agency, the following services shall be made available:
> (i) Distribution of mail voter registration application forms in accordance with paragraph (6).
> (ii) Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance.
> (iii) Acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

42 U.S.C. § 1973gg-5(a)(4)(A).[6]

Paragraph (a)(6) of Section 7 sets forth the manner in which public assistance agencies

must distribute voter registration applications, and it is the key provision at issue in Plaintiff's

motion.  Subparagraph (A) of paragraph (a)(6) lays out the NVRA's requirement for distribution

of voter registration applications.  It provides:

> (6) A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall – (A) distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance – (i) the mail voter registration application form ... ; or (ii) the office's own form if it is equivalent to th[at] form ..., unless the applicant, in writing, declines to register to vote.

42 U.S.C. § 1973gg-5(a)(6)(A) (hereinafter "subparagraph (A)").[7]

Separate from subparagraph (A)'s requirement that public assistance agencies distribute

mail voter registration applications, subparagraph (B) requires the agencies to provide all clients

---

[6] Only the requirement in (i), concerning distribution of mail voter registration applications, is at issue in this case.  Plaintiff has not alleged any specific facts relating to deficiencies in assistance in completing forms or in transmittal of forms, as referred to in (ii) and (iii).

[7] Plaintiff does not challenge the contents of the mail voter registration application form provided by HSD offices pursuant to (ii).

8

with a form.  The form must ask the question "[i]f you are not registered to vote where you live now, would you like to apply to register to vote here today?"  42 U.S.C. § 1973gg-5(a)(6)(B) (hereinafter "subparagraph (B)").  The form must also notify the client that the decision of whether or not to register to vote "will not affect the amount of assistance that you will be provided by this agency," must include a statement offering assistance in filling out the registration application if the client so desires, and must also include a statement regarding the client's ability to file a complaint if he or she believes that his or her right to register or to decline to register or to choose a political affiliation was interfered with.  Subparagraph (B) at (ii), (iv), and (v).

In addition, the form must include checkboxes for the client to indicate whether he or she would like to register to vote at the public assistance agency.  *Id*. at (iii).  Subparagraph (B)(iii) further specifies that the form should include a statement, in close proximity to the checkboxes, that "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME." *Id.* (emphasis in original).  With regard to what public assistance agencies should do when a client leaves both checkboxes blank, subparagraph (B)(iii) instructs that "failure to check either box . . . constitute[s] a declination to register for *purposes of subparagraph (C)*." *Id.* (emphasis added).[8]

Subparagraph (C) specifies that public assistance agencies are to provide clients who do not decline to register to vote the same degree of assistance in completing a voter registration application as they provide with completing the agency's own benefits forms, subject to clients

---

[8] The "form" referred to in section (a)(6)(B) is not distributed by HSD as a stand-alone form, but rather is inserted as one section in the middle of HSD's standard forms.  *See*, *e.g.*, Ex. 1-G, attached to Pl. Memo, at p. 4 of 6; Ex. 1-H at sec. 13.  Plaintiff does not contend that the form's requirements are not met or that its placement as part of HSD's standard forms is improper.

refusing such assistance.  42 U.S.C. § 1973gg-5(a)(6)(C) (hereinafter "subparagraph (C)").

Thus, subparagraph (C) solely addresses the issue of how much assistance an agency must

provide to a client who fills out a voter registration application at the agency office.  It does not

address the threshold question of whether a voter registration application must be distributed to

the client in the first place, or what constitutes a declination to register to vote for purposes of

subparagraph (A).

        3.    <u>Analysis</u>

Defendants' interpretation of Section 7's requirements is not supported by the statute's

plain language.  Absent an indication that applying the plain language of a statute would "yield

patent absurdity, [the Court's] obligation is to apply the statute as Congress wrote it."  *Robbins v.*

*Chronister*, 402 F.3d 1047, 1050 (10th Cir. 2005) (citation omitted).  If Congress does not

explain the specific meaning of a statutory term, the Court should assume that Congress intended

the word to be given its ordinary meaning, "which we may discover through the use of

dictionaries."  *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1254 (10th Cir. 1998).

Section 7 does not make the provision of a voter registration application contingent upon

an affirmative request, either written or verbal, from a client.  Instead, it directs agencies to

distribute voter registration applications to their clients as a part of every qualifying interaction,

unless those clients "in writing, decline[] to register to vote."  Subparagraph (A).  While the

NVRA does not define "in writing" for purposes of Section 7, the ordinary use of the term

"writing" does not include a blank response.  For instance, Black's Law Dictionary defines

"writing" as "any intentional recording of words that may be viewed or heard with or without

mechanical aids."  *Black's Law Dictionary* at 1748 (9th ed. 2009).  A blank response on the

declination provision does not constitute an "intentional recording of words" and so cannot be a statement "in writing" for purposes of subparagraph (A). Defendants interpret the language in subparagraph (B)(iii), which instructs that the declination form should state "if you do not check either box, you will be considered to have decided not to register to vote at this time," as applying to subparagraph (A), and as enabling them to treat a blank declination form as a statement, in writing, that the client does not wish to receive a voter registration form at all.

This interpretation is undermined both by subparagraph (B)'s plain language and by its relationship to subparagraphs (A) and (C). The language relied on by Defendants requires that HSD advise clients that, if they do not check either box on the declination form, HSD will assume that the client has decided not to resister to vote "*at this time.*" The declination form does not provide a client with a provision for receiving a mail voter registration form that the client could take with them and use to register at a later time. At the same time that it authorizes HSD to treat a blank declination form as a decision by the client not to register to vote at the HSD office, subparagraph (B)(iii) provides context for that authorization by explaining that "failure to check either box [shall be] deemed to constitute a declination to register *for purposes of subparagraph (C).*" *Id.* (emphasis added).

As previously explained, subparagraph (C) solely addresses the circumstances in which public assistance agencies are required to provide assistance to clients in filling out voter registration forms. Thus, subparagraph (B)(iii) is properly understood as addressing the effect of a blank declination form on agencies' responsibilities to provide voter registration assistance. It pertains only to the circumstances under which assistance must be offered to persons who choose to register at the agency office, not to whether registration applications must be

11

distributed in the first place.  Subparagraph (B)(iii) simply relieves HSD offices from the burden of providing assistance with voter registration to clients who have not affirmatively indicated that they wish to register in an agency office "at this time," and protects agencies against potential grievances from clients who claim they were not adequately assisted by the agency but who had not affirmatively indicated that they desired assistance.

Moreover, if Congress had intended for a blank declination form, as referred to in subparagraph (B), to serve as a declination for purposes of subparagraph A's application distribution requirement, the language in subparagraph (B)(iii) expressly referring to subparagraph (C) would be superfluous.  If agencies were not still required to provide voter registration applications to clients who leave the declination form blank, then the agencies would not need to consider whether to provide such individuals with assistance in completing a registration application, because, by definition, no application would be provided.  Courts should avoid adopting a statutory construction that would render any statutory provision superfluous. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (internal quotation marks omitted).  Defendants' interpretation renders part of subparagraph (B)(iii) superfluous, and the Court declines to adopt it.

Congress could easily have written that failure to check either box on the declination form would be deemed to constitute a declination to register for purposes of subparagraph (A), but it did not do so.  It also could easily have avoided making declination for purposes of subparagraph (A) dependant upon a "writing," but it did not do that either.  The interrelation of

subparagraphs (A), (B), and (C) make clear that receipt of a voter registration form is subject to a written "opt out" provision, and only the receipt of assistance in filling out the registration form is subject to an "opt in" provision.

Plaintiff's interpretation of Section 7's requirements is also supported by the NVRA's remedial purpose and its legislative history.  One of the stated purposes of the NVRA is "to establish procedures that will increase the number of eligible citizens who register to vote" and to enable governments to implement the statute's requirements "in a manner that enhances the participation of eligible citizens as voters."  42 U.S.C. § 1973gg(b).  In enacting the NVRA, Congress found that federal, state, and local governments have a duty to promote the exercise of the right to vote and it sought to mitigate "discriminatory and unfair registration laws and procedures [that] can have a direct and damaging effect on voter participation in elections ... and [that] disproportionately harm voter participation by various groups, including racial minorities." 42 U.S.C. § 1973gg(a).  Defendants' interpretation that Section 7 requires agencies to distribute voter registration forms only to those clients who affirmatively indicate that they want to register to vote at the time of service goes against the NVRA's stated remedial purpose.  Low income citizens, some of the very people that Congress intended to reach with Section 7's mandates, may have reasons to decline to register to vote at a public assistance agency while still desiring to receive an application form that they can fill out later.  Section 7 provides for this option.

Additionally, Section 7's legislative history supports Plaintiff's interpretation.  The Conference Report provides the background of the declination form requirement, and demonstrates that the declination form was not meant to supersede or modify subparagraph (A)'s mandate.  The House-Senate Conference Report finalizing the NVRA added the requirement that

public assistance clients be provided with the declination form specified in subparagraph (B).

*See* H. R. Rep. No, 103-66, at 17 (1993).  The Conference Report explains that the declination

form was added to guard against the possibility of coercion of agency clients:

> The [declination form] is intended to deal with concerns raised about the inclusion of certain agencies in an agency-based registration program and the possibility of intimidation or coercion.  Concern was expressed that in agencies that provide benefits, staff might suggest that registering to vote could have some bearing on the availability of services or benefits provided by that agency.  In addition to the provisions in the House bill relating to coercion and intimidation, [subparagraph B] includes specific provisions that address that situation.

*Id.*

Thus, the declination form was not added to Section 7 to define or limit the responsibility

of agencies to distribute voter registration applications to clients, but rather to ensure that agents

do not improperly influence clients' decisions about whether or not to register at that time, and to

ensure that agents do not improperly influence a client's choice of political party.  By ensuring

that all clients receive a voter registration form, but making it so that only clients who

affirmatively request assistance in filling out the form receive such assistance, Congress

provided for its dual goals of increased participation and freedom from coercion.

For the foregoing reasons, the Court finds that HSD's current policy of distributing voter

registration applications only to clients who affirmatively request them violates Section 7 of the

NVRA, and that Plaintiff's motion for partial summary judgment should be granted.  Section 7

requires that clients be provided with a mail voter registration form unless they affirmatively

decline, in writing.  HSD's current declination form and policy do not meet this requirement.

B.      Defendant HSD's Motion for Summary Judgment

Defendant HSD contends that it is in compliance with all of its responsibilities under the NVRA so that Plaintiff's case must fail as a matter of law.  In light of the Court's ruling that HSD offices are misinterpreting Section 7's requirements regarding distribution of voter registration forms, HSD cannot prevail on its motion.

In addition, even if HSD were in compliance regarding distribution of voter registration forms and every other requirement under the NVRA, Plaintiff has raised sufficient questions of fact regarding allegations of past noncompliance that HSD could not receive summary judgment. Even though HSD has apparently taken some remedial steps in response to this lawsuit, given the allegations of widespread past noncompliance, the Court finds that sufficient questions remain regarding the need to monitor future compliance, precluding summary judgment.

Voluntary cessation of unlawful conduct will not moot a case unless "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).  A defendant contending that a plaintiff has no cause of action because of the defendant's new behavior "must meet a 'heavy burden' of demonstrating that there is no reasonable expectation that the alleged wrongs will be repeated.  *Blinder, Robinson & Co. v. SEC*, 692 F.2d 102, 106-07 (10th Cir. 1982) (quoting *W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  Thus, "[w]hen defendants are shown to have settled into a continuing practice ... courts will not assume that it has been abandoned without clear proof.  It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when ... there is probability of resumption."  *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952) (citation omitted).  Given Plaintiff's allegations of years of widespread failure to implement Section 7's requirements,

particularly with respect to monitoring or addressing apparent deficiencies, the Court cannot say as a matter of law that HSD has demonstrated that it has the tools in place to be compliant in the future without an injunction and Court monitoring.  For the foregoing reasons, HSD's motion for summary judgment is denied.

C.      Defendant Herrera's Motion for Summary Judgment

The NVRA requires that each state "designate a State officer or employee as the chief State election official."  42 U.S.C. § 1973gg-8.  This designated official is "responsible for coordination of State responsibilities" under the NVRA.  *Id.*  New Mexico has designated the Secretary of State as its "chief State election official" for NVRA purposes.  *See* Defendant Herrera's Motion for Summary Judgment (hereinafter "Deft. SOS Mot.") [Doc. 111] at 2; NMAC 1.10.8.15.  Very little case law in general, and none in the Tenth Circuit, exists that interprets what duties a chief State election official must perform in order to be compliant with the NVRA.  However, Defendant Herrera contends that there is no material question of fact regarding her compliance with the NVRA, so that summary judgment should be entered in her favor.[9]

Defendant Herrera's primary argument is that the NVRA does not place responsibility on the "chief State election official" to enforce provisions of the NVRA in the state, and that her role is simply to "coordinate" state responsibilities by disseminating and collecting information,

---

[9] As an initial matter, Defendant Herrera's motion failed to follow Local Rule 56.1(b), which requires a party moving for summary judgment to include in its supporting memorandum a numbered "statement of all the material facts as to which movant contends no genuine issue exists."  The numbered items on this list must "refer with particularity to those portions of the record upon which movant relies."  *Id.*  Defendant Herrera's motion failed to include any statement of facts, which makes it more difficult for the Court to evaluate which facts she alleges are uncontested.  The Court is not denying Defendant Herrera's motion on these grounds, but it notes that future motions from Defendant's office should conform to the rules.

providing voter registration forms to agencies, and providing assistance to those agencies. *Id*. She contends that, because the NVRA does not charge her with enforcing its provisions, she does not bear responsibility for the failure of any other state agencies (including HSD) to meet their obligations under the law. *Id*. She further contends that no question of fact exists regarding whether she has fulfilled her coordination obligations under the NVRA. *Id*. at 8. However, because, as discussed below, Defendant Herrera has not demonstrated as a factual matter that she has complied with her obligations under the NVRA, her motion will be denied.

Defendant Herrera contends that the dispositive issue raised by her motion is solely a legal one, namely "does the NVRA require the Secretary to enforce compliance with the NVRA by other State agencies that bear clear burdens under the statute?" Defendant Herrera's Reply in Support of Her Motion for Summary Judgment (hereinafter "Deft. SOS Rep.") [Doc. 121] at 2. However, this is not the only issue on which Defendant Herrera must prevail in order for the Court to grant her motion. Defendant Herrera must also demonstrate that no question of material fact exists as to whether the actions her office has taken are sufficient to meet her obligations under the NVRA. Defendant Herrera acknowledges that this can be viewed as a mixed question of fact and law. *Id*. Even if Defendant Herrera were not responsible, as the state's chief election official, for ensuring that the NVRA's provisions were being met, she has not demonstrated as a matter of law that the actions she has taken are sufficient to meet the NVRA's requirements.

1.   Defendant Herrera's Responsibility for State Compliance with the NVRA

The first argument that must be resolved in Defendant Herrera's favor to enable her to prevail on her motion for summary judgment is whether she can be held responsible for the state's failure to comply with the NVRA. Defendant Herrera contends that the statute makes her

17

responsible only for "coordination" of state responsibilities, and that responsibility for any failure to follow the NVRA's dictates must lie with HSD, because HSD is the agency designated by the state to provide voter registration services to those receiving public assistance. *See* Deft. SOS Mot. [Doc. 111] at 3-4.

The principal case construing the obligations that the NVRA places on a state's chief election official is *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008). The *Harkless* court addressed directly the question at issue in this case: "whether...the chief election official[] has a role in ensuring [the state's] compliance with the NVRA." *Harkless*, 545 F.3d at 449. The *Harkless* court held that each state's NVRA chief election official is responsible for state compliance, and that Ohio's Secretary of State was therefore liable for Ohio's compliance with Section 7.

*Harkless* concerned an allegation that the State of Ohio failed to comply with Section 7 of the NVRA. The complaint named both Ohio's Secretary of State ("SOS") and its state Director of the Department of Job and Family Services ("DJFS"). It alleged that county DJFS offices were failing to distribute voter registration forms, and that neither the SOS nor the Director of DJFS monitored compliance with Section 7 or enforced its mandates. Similar to the instant case, the state DJFS and its local offices were designated as voter registration agencies under Section 7. The *Harkless* court rejected the SOS's argument that she had no role in ensuring Ohio's compliance with Section 7 because compliance was DJFS's responsibility.

In doing so, the *Harkless* court pointed to the NVRA's legislative history, where Congress explained that each state's chief election official is "responsible for implementing the state's function under the [NVRA]. 545 F.3d at 451 (quoting S. Rep. 103-6 at 39 (1993)). The

court also cited the construction of the statute by the Federal Election Assistance Commission, which similarly concluded that each state's chief election official is responsible for ensuring compliance with the NVRA's requirements. *Id*. The court specifically found that the "coordination" duties referenced in the statute include ensuring that the NVRA's requirements are met. *Id*. at 452 ("[T]he better interpretation of the statute [is] that each state shall designate voter registration agencies, and that each state shall ensure that the agencies complete the required tasks. And the [SOS], as Ohio's chief election officer, is responsible for 'harmonious combination'–or implementation and enforcement–of that program on behalf of Ohio.")

Defendant Herrera characterizes the *Harkless* court's finding regarding the Secretary of State's enforcement responsibilities as "dicta." Deft. SOS Mot. at 5. She argues that *Harkless* is distinguishable from this case because that case dealt with the issue of whether the state could delegate its responsibilities to local officials, and that the *Harkless* court's finding was only that some official at the state level had to be responsible for compliance. This fundamentally misreads *Harkless*. Although the *Harkless* court spoke at points about how certain provisions of the NVRA would be pointless if states could abdicate their responsibilities by delegating them to local officials, if the court's only concern had been that some state actor was responsible for ensuring NVRA compliance, it could have limited responsibility to the state's DJFS Director, who was also a named defendant. Instead, the court explicitly answered the question of whether the SOS was responsible for ensuring compliance, and held that both the SOS and the DJFS Director were liable. Its holding was not dicta.

In explaining the reasoning for its decision, the *Harkless* court also cited the requirement that a person alleging a violation of the NVRA must, in most circumstances, first "provide

19

written notice of the violation to the chief election official of the State involved," before bringing

a civil enforcement action. 545 F.3d at 452 (quoting 42 U.S.C. § 1973gg-9(b)(1)). The NVRA

provides that, if the alleged violation is not corrected within a specified period after receipt of the

notice of violation, the aggrieved person may then file suit. 42 U.S.C. § 1973gg-9(b)(2). This

notice requirement was structured "in such a way that notice would provide states in violation of

the Act an opportunity to attempt compliance before facing litigation." *ACORN v. Miller*, 129

F.3d 833, 838 (6th Cir. 1997). As the *Harkless* court explained, "[r]equiring would-be plaintiffs

to send notice to their chief election official about ongoing NVRA violations would hardly make

sense if that official did not have the authority to remedy NVRA violations." The Court agrees.

Although, as a case from another Circuit, *Harkless* is not binding precedent, because of the

dearth of case law interpreting this provision, and because the Court finds the *Harkless* court's

reasoning persuasive, it adopts its finding that a state's chief state election official bears at least

some responsibility for the state's compliance with Section 7's mandates.

2.  <u>Defendant Herrera's Responsibilities under State Law</u>

The concept that the chief election official has the ability and responsibility to ensure

compliance with Section 7 is not only contained in the NVRA, but also in New Mexico law.

State law grants Defendant Herrera the responsibility to "adopt and publish ... rules for the

administration of a state-agency based voter registration program ... in accordance with the

NVRA." NMSA 1-4-48(A). Thus, Defendant Herrera has the obligation to prescribe the actions

that the state, including HSD offices, must take to comply with Section 7. This includes

specifying the manner in which voter registration applications must be offered to clients in HSD

offices, and the degree of monitoring that should be undertaken to assess the state's compliance

with Section 7.  Because Defendant Herrera is responsible for issuing rules and training

materials for Section 7 compliance, and, as the Court has already found, the state is not in

compliance with Section 7's requirements because of the manner in which it distributes voter

registration applications, Defendant Herrera bears some responsibility for any violations, and

cannot receive summary judgment.

In fact, Defendant Herrera essentially admits that her office bears some responsibility for

ensuring HSD offices' compliance with Section 7.  In her motion for summary judgment,

Defendant Herrera suggests that her "coordination" duties under section 1973gg-8:

> include many of the things that she has agreed to do in settling ... Plaintiffs'
> Section 5 claims: (1) consulting with the State agencies directly responsible for
> implementing the NVRA regarding compliance issues; (2) monitoring,
> evaluating, and coordinating compliance; (3) providing support and guidance to
> the State agencies responsible for implementing the NVRA; and (4) providing
> materials and training regarding the requirements of the NVRA.

Deft. SOS Mot. [Doc. 111] at 7.

These admitted responsibilities demonstrate that, contrary to her argument, the Secretary

does bear some responsibility for the failure of other agencies to meet their obligations under the

law, and does have some authority to direct the actions of other agencies.  As the creator of

training materials, the Secretary is presumably responsible for ensuring that the materials

correctly state the law.  Further, if the Secretary had no responsibility and authority for ensuring

compliance, her compliance evaluations would serve no purpose.

3.    Defendant Herrera's Actions

Finally, even if the Secretary bears no responsibility for ensuring that other agencies are

meeting Section 7's requirements, she still has not demonstrated, as a matter of law, that she is

entitled to summary judgment.  In arguing that she has met all of her obligations to such a degree

21

that she should be awarded summary judgment, Defendant Herrera lists four actions she or prior Secretaries of State have performed.  First, her office has "assigned unique site code numbers to each individual office of each State agency tasked with voter registration pursuant to the NVRA that the SOS can use to verify voter registration efforts."  Deft. SOS Mot. at 9.  However, merely assigning unique code numbers to each agency appears to be of limited utility without active monitoring of registration data or follow-up in instances where the number of registrations fell far below what would have been expected given the number of HSD clients, as alleged by Plaintiff.  *See* Plaintiff's Controverting and Separate Statement of Facts, attached as Ex. 1 to Doc. 88, at 15-20, ¶¶ 68-90.  Second, the Secretary points to the regulations that her office promulgated in 1994, to help implement the NVRA.  *Id*.  In light of Plaintiff's allegations regarding the failure of HSD to register voters and the apparent lack of any evaluation by the Secretary of whether HSD is performing its responsibilities, it is not clear that leaving these sixteen year old regulations in place reflects any active "coordination" on the part of the Secretary.  Third, the Secretary points to training her office has provided to managers of the offices responsible for registering voters.  *Id*.  However, this training has apparently not been conducted since at least 2004.  The Secretary contends that this lack of training is of "no significance" because "[t]he NVRA does not require the Secretary to conduct training on any particular schedule."  Deft. SOS Rep. [Doc. 121] at 6.  However, in light of all of Plaintiff's allegations, it is at least a question of fact as to whether a failure to conduct training for at least six years constitutes "coordination" sufficient to meet the NVRA's requirements.  Finally, the Secretary contends that she has met her duties because she issued manuals that provide guidance in meeting NVRA obligations to all state agencies responsible for registering voters.  However,

22

given the Court's finding that these agencies were incorrectly interpreting the law, it is far from clear that the Secretary's provision of manuals met her responsibilities. For the foregoing reasons, Defendant Herrera's motion for summary judgment is denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant HSD's *Motion for Summary Judgment* [Doc. 57] is DENIED, that Defendant Mary Herrera's *Motion for Summary Judgment* [Doc. 111] is DENIED, that Plaintiff's *Motion for Partial Summary Judgment* [Doc. 109] is GRANTED, that Defendant HSD's *Motion to Strike* [Doc. 91] is DENIED, and that Defendant HSD's *Motion to Extend Time* [Doc. 119] is GRANTED.

**UNITED STATES DISTRICT JUDGE**