IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CELIA VALDEZ, GRACIELA
GRAJEDA, SHAWNA ALLERS, and
JESSE RODRIGUEZ,

     **Plaintiffs,**

v.               Civ. No.  09-668 JCH/DJS

MARY HERRERA, in her official capacity
as New Mexico Secretary of State;
KATHRYN FALLS, in her official capacity
as Secretary of New Mexico Human
Services Department; FRED SANDOVAL,
in his official capacity as the Director of the
Income Support Division of the New
Mexico Human Services Department;
CAROLYN INGRAM, in her capacity as
the Director of the Medical Assistance
Division of the New Mexico Human
Services Department; DOROTHY
RODRIGUEZ, in her capacity as the
Secretary of the New Mexico Taxation and
Revenue Department; and MICHAEL
SANDOVAL, in his capacity as the
Director of the Motor Vehicle Division of
the New Mexico Taxation and Revenue
Department,

     **Defendants.**

### ORDER GRANTING ATTORNEYS' FEES

   This matter comes before the Court on Plaintiffs' *Application for Attorneys' Fees from*

*Defendant Herrera*, filed August 23, 2010 [Doc. 103].  The Court, having considered the

briefing, exhibits, and relevant law, and being otherwise fully informed, finds that Plaintiffs' fee

application is well taken and should be GRANTED.

## BACKGROUND

The litigation that gave rise to this fee petition concerns alleged past and continuing violations of a portion of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-3 (commonly known as "Section 5").  Section 5 governs a state's obligation to offer voter registration services when a person applies for or renews a driver's license or identification card, as overseen in this case by New Mexico's Taxation and Revenue Department.  On July 1, 2010, Plaintiffs entered into a settlement agreement on this claim with Defendants Mary Herrera, in her capacity as New Mexico Secretary of State ("SOS"), Rick Homans, in his capacity as Secretary of New Mexico's Taxation and Revenue Department ("TRD"), and Michael Sandoval, in his capacity as the Director of New Mexico's Motor Vehicle Division ("MVD").[1]  *See* Settlement Agreement, attached as Ex. 1 to Doc. 84.

Pursuant to Section XI of the Settlement Agreement, Plaintiffs are "entitled to recover reasonable attorneys' fees and litigation expenses" from TRD, MVD, and the SOS.  *See* Settlement Agreement at 12, § XI.  The parties are required to "confer in good faith to resolve the amount and payment of attorneys' fees and litigation expenses," and if the parties are unable to reach an agreement regarding fees and expenses, Plaintiffs are entitled to submit a fee application to the Court for that claim.  *Id.*  On August 12, 2011, Plaintiffs settled their claims for attorneys' fees and litigation expenses against TRD and MVD.  *See* Doc. 98.  This settlement provided for a recovery from TRD and MVD of $200,000 and fully resolved Plaintiffs' claims

---

[1] This settlement only addressed the alleged violations of Section 5.  Plaintiffs continued to pursue litigation related to alleged violations of Section 7 of the NVRA, 42 U.S.C. § 1973gg-5.  This additional litigation resulted in a consent judgment entered by the Court on February 24, 2011.  *See* Doc. 148.

2

for fees against these two parties.  *See* Declaration of Robert A. Kengle, attached as Ex. 5 to Doc. 103, at 2, ¶ 4.  Despite substantive negotiations with the SOS, Plaintiffs were unable to reach an agreement with Defendant Herrera regarding fees and expenses.  Plaintiffs therefore filed the instant fee application.

Plaintiffs' application seeks a total recovery of $67,585.66, comprised of the following categories: (1) the balance of their attorneys' fee lodestar from the Section 5 claim ($41,174.38); (2) payment for the time expended in preparing the fee application ($23,115); (3) a *pro rata* share of travel time at 50 percent of hourly rates used to calculate the lodestar ($3,008.05); and (4) New Mexico gross receipts tax on the recovery by Plaintiffs' local counsel ($288.23).

## DISCUSSION

Regarding the lodestar calculation, Plaintiffs' attorneys expended a total of 910 hours litigating the Section 5 claim, not including travel time.  Plaintiffs' attorneys' hours are documented in declarations and meticulous, highly-detailed time records attached to their fee application.  Plaintiffs' attorneys, almost exclusively practicing out of state, seek fees based on local rates rather than their usual, much higher, customary rates.  In support of their proposed fees, Plaintiffs submitted the affidavit of Phillip B. Davis, an Albuquerque attorney with substantial expertise in attorney fee issues in civil rights cases.  *See* Ex. 1, attached to Doc. 103. Plaintiffs seek $350 per hour for lawyers who graduated from law school before 1996; $300 per hour for lawyers who graduated between 1996 and 2000; $225 per hour for lawyers who graduated between 2001 and 2006; and $150 per hour for lawyers who graduated in 2007 and afterwards.  Plaintiffs also seek $95 per hour for legal interns and legal support staff.  At these rates, supported by Mr. Davis' affidavit, the hours spent on the Section 5 litigation result in a

3

lodestar calculation of $241,147.38.  The $41,174.38 that Plaintiffs seek from the SOS represents the difference between the total Section 5 lodestar and the TRD/MVD settlement.[2]

Plaintiffs' attorneys expended 92 hours preparing the fee application.  For this, they seek $23,115.  This request is also documented through thorough time records.  Plaintiffs voluntarily elected to exclude from their fee request the hours expended in attempted settlement of attorneys' fees with the SOS Defendant, claiming only hours related to work needed to prepare the application and to assemble the necessary documentation.  An award of reasonable attorneys' fees may include compensation for time expended in preparing and presenting a fee application. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986) (citing *Gurule v. Wilson*, 635 F.2d 782, 792 (10th Cir. 1980)).  While 92 hours spent on a fee application could be deemed excessive under some circumstances, given the complexity of the litigation involved, the number of attorneys from many different firms working together on the issues, and the thoroughness of the package that Plaintiffs submitted, the Court does not find the time to be excessive, and it will compensate Plaintiffs for such hours.

Plaintiffs also seek $3,008.05 for hours of travel expended to litigate the Section 5 claim. Plaintiffs arrive at this figure by first reducing their local billing rate by half.  They then multiply the hours traveled by the reduced billing rate and allot only a *pro rata* share of the expense to the SOS.  Plaintiffs calculated the SOS' *pro rata* share by comparing the amount of lodestar fees they were seeking from the SOS ($41,174.38) to the total Section 5 lodestar ($241,174.38).  This

---

[2] In fact, Plaintiffs' methodology appears to result in a lower amount claimed against the SOS than could validly be claimed.  The TRD/MVD settlement covered not only lodestar hours, but also expenses, but Plaintiffs have elected to treat the entire $200,000 settlement amount as applying toward the lodestar amount, which directly reduces the lodestar amount claimed against the SOS.

resulted in a *pro rata* share of 17.07 percent of the total.  Plaintiffs applied the same percentage

share that they sought from the SOS with regard to lodestar fees when seeking fees for travel

time.  Thus, for 140.25 hours of travel time, billed at reduced rates ranging from $112.50/hr to

$175.50/hr, Plaintiffs seek only $3,008.05 of a total of $17,621.85.  This is a valid methodology,

and Plaintiffs will be awarded these hours for travel.

The SOS does not appear to challenge the reasonableness of the number of hours

Plaintiffs' counsel worked to litigate and settle the Section 5 claim, the number of hours counsel

expended in preparing the fee application, the method of calculating fees for travel time, or the

reasonableness of counsels' requested New Mexico hourly rates.  Instead, the SOS argues that

Plaintiffs are not entitled to receive any fees and that, even if they are eligible to receive some

fees, the hours worked by Plaintiffs' counsel in litigating and settling the Section 5 claim should

be compartmentalized and limited to only the hours counsel spent interacting with the SOS'

counsel, with all other hours worked on the Section 5 litigation ignored.  The Court will address

each of the SOS' arguments in turn.

1.    Whether Plaintiffs Compromised their Claim by Settling with TRD/MVD

The SOS first argues that Plaintiffs are not entitled to recover any attorneys' fees from

the SOS because, by settling with TRD/MVD, they have extinguished their claim.  The SOS

notes that Plaintiffs segregated the fees that they sought by claim, i.e., fees for the Section 5

litigation and fees for the Section 7 litigation, rather than by Defendant.  She contends that, by

compromising their claim on Section 5 fees with TRD/MVD, Plaintiffs gave up their rights to

any further remuneration from the SOS.  This is incorrect.

The Settlement Agreement signed by Plaintiffs, TRD, MVD, and the SOS expressly provided that Plaintiffs are entitled to recover reasonable attorneys' fees and litigation expenses from Defendants.  No limitation was placed on the percentage of reasonable attorneys' fees for which any one Defendant would be liable.  As part of settlement negotiations, Plaintiffs created a spreadsheet for Defendants identifying each attorney or legal assistant who worked on the Section 5 litigation, the hours that they billed, their actual billing rate, a discounted "New Mexico" billing rate, and a summary of litigation expenses.  *See* Ex. 1 to Doc. 113.  Plaintiffs specified that the reduced rates they were seeking as part of the lodestar calculation were for settlement purposes only, and that they reserved the right to adjust them upward should the fee issue be presented to the Court.  *See id*.  Plaintiffs' calculations resulted in a lodestar for the Section 5 claims of $256,054.25 at the New Mexico rate ($564,542.10 at their customary rates), with litigation expenses of $32,615.24.  *See id*.  Plaintiffs offered to settle both fees and expenses for $241,174.38.  TRD/MVD offered $200,000 to settle their part of the obligation, which Plaintiffs accepted.  This acceptance only terminated TRD/MVD's obligations to pay attorneys' fees and costs; the SOS was not a party to this settlement, and their obligations were not extinguished simply because TRD/MVD settled.  Contrary to the SOS's assertion, Plaintiffs were not "made whole on their fee request," Doc. 113 at 4, when they accepted TRD/MVD's offer.

In contending that a defendant cannot be responsible for any part of a fee liability after a portion of such liability is settled with another defendant, the SOS raises the specter of a settling party offering a minimal amount, leaving the non-settling party on the hook for the remainder. Whether a situation could arise in which a defendant that has previously agreed to pay

6

reasonable attorneys' fees and expenses is left facing an unreasonable portion of such costs because of a minimal settlement by the remaining defendants is not an issue that the Court has to confront in this case, because the amount sought by Plaintiffs is eminently reasonable.  The $41,174.38 in remaining Section 5 attorneys' fees that Plaintiffs seek from the SOS is based on the reduced amount that they initially put forth as a settlement offer to all Defendants.  Plaintiffs would be well within their rights to seek the full lodestar amount that they have documented ($256,054.25) as well as documented litigation expenses ($32,615.24), reduced by the $200,000 payment from TRD/MVD.  This would result in a recovery from the SOS of $88,669.49, rather than the $41,174.38 that they seek.  The SOS has provided no legal authority to support her claim that she should be absolved from all liability for costs that she has previously agreed to pay, simply because she refused to settle.  To hold otherwise would be to discourage settlement of fee disputes.  Of course, if Plaintiffs could not demonstrate that they were entitled to a recovery of fees in excess of the $200,000 paid by TRD/MVD, the Court would not make an award against the SOS.  However, Plaintiffs have documented that such fees are reasonable, and the Court will therefore award them.

2.    Whether Plaintiffs are a "Prevailing Party"

The SOS also argues that Plaintiffs are ineligible to recover attorneys' fees because they are not a "prevailing party" as that term is used under the NVRA.  *See* Doc. 113 at 4-7.  She contends that a plaintiff is not a "prevailing party" for purposes of recovering attorneys' fees simply because a defendant voluntarily changes its conduct in response to a suit; rather, she argues that the plaintiff must have obtained an enforceable judgment on the merits and a judicially sanctioned change in the legal relationship of the parties to be eligible for attorneys'

fees.  Because the Section 5 Settlement Agreement was not subject to judicial approval, the SOS

argues that it cannot confer prevailing party status on Plaintiffs even though the agreement

provides that the Court will retain jurisdiction to enforce the settlement's conditions.  This

argument fails for two reasons.

First, the July 1, 2010 Settlement Agreement to which the SOS was a party specifically

provides that all Defendants are liable to Plaintiffs for "reasonable attorneys' fees and litigation

expenses."  Settlement Agreement, attached as Ex. 1 to Doc. 84, at 12, § XI.  This agreement

does not rely on a finding that Plaintiffs are a "prevailing party" for NVRA purposes to create

liability for attorneys' fees and litigation costs; such liability is established on the face of the

Settlement Agreement.  Second, Tenth Circuit precedent has long provided that a court's

decision on the merits is not required for a plaintiff to recover fees and costs as a prevailing

party.  *See, e.g., Chicano Police Officer's Assoc. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980)

("if a settlement provides some benefit to plaintiffs or a vindication of their rights, then the

congressional intent to encourage private enforcement of civil rights...will be furthered by the

awarding of fees...as long as plaintiffs have received substantial benefits").  In this case, as

explained further below, Plaintiffs' suit resulted in significant changes in how New Mexico

implements Section 5 of the NVRA, and they would rightfully be considered a prevailing party.

The result achieved by Plaintiffs is presumably the type of result that Congress intended to foster

when it provided for recovery of attorneys' fees in NVRA enforcement cases.

    3.    <u>Whether Plaintiffs have Demonstrated that the SOS Violated the NVRA</u>

The SOS next argues that she cannot be responsible for payment of attorneys' fees

because Plaintiffs have failed to demonstrate that she violated the NVRA in any way.  The SOS

contends that, because she has not violated the NVRA, any amount of attorney's fees that Plaintiffs seek to be awarded against her is presumptively unreasonable, notwithstanding her contractual agreement to pay reasonable attorneys' fees and expenses related to the Section 5 litigation.  However, her agreement to pay such costs does not condition her liability on any offer of proof by Plaintiffs that she violated the NVRA.  Moreover, the Court has explicitly rejected the SOS's argument that, as the "chief election official" for New Mexico, she does not bear any responsiblity for the state's failure to comply with the NVRA.  *See* Court's Memorandum Opinion and Order regarding Section 7 claims [Doc. 131] at 17-21.[3]

>        4.        Whether Plaintiffs have Justified the Amount they Seek

Finally, the SOS argues that Plaintiffs are not entitled to any fees from her because they achieved minimal success against her and because the vast majority of work they performed on their Section 5 claim involved dealings with TRD/MVD counsel rather than SOS counsel.  She contends that the SOS should be liable only for hours Plaintiffs' counsel spent interacting with the SOS' counsel, and that all other hours worked concerning the Section 5 claim should be ignored.  This argument is incorrect for two reasons.

First, the Settlement Agreement does not subdivide or partition Plaintiffs' Section 5 claim, nor does it subdivide the work performed in litigating and settling the claim for purposes of allocating fees; it expressly provides that both the SOS and the TRD/MVD Defendants are responsible for paying reasonable attorneys' fees to Plaintiffs.  Had the SOS intended to limit her liability for fees to those hours worked directly with respect to her counsel, she could have

---

[3] The Court's ruling was made in the context of the SOS' obligations under Section 7 of the NVRA, but is equally applicable to her obligations under Section 5.  The Court's ruling was issued on December 21, 2010, well after the SOS made her argument with respect to this fee dispute.

attempted to negotiate such a provision in the Settlement Agreement. Even if she attempted to do so, she did not succeed, and the agreement cannot be read to contain such a provision.

The absence of a fee partition within the Settlement Agreement is reasonable, because Plaintiffs' Section 5 claim involves a common core of facts that required Plaintiffs to obtain information from, and assess the conduct of, several Defendants, each of whom bore some responsibility for the alleged violations. In calculating the hours that their attorneys worked on the Section 5 claim, Plaintiffs counted all of the hours expended primarily or solely on the Section 5 claim, including the hours spent negotiating the Settlement Agreement, but not including the time spent negotiating the subsequent fee agreement. *See* Doc. 103 at 12. With respect to those hours spent on both the Section 5 and Section 7 claims, which cannot be assigned primarily to one claim or Defendant (such as time spent drafting the Complaint, filing a motion to amend the Complaint, and some portions of discovery), Plaintiffs sought to allocate only 50 percent to Section 5 claims. *See id*. Similarly, with respect to hours related directly to interactions with the SOS that included both a Section 5 and Section 7 component, Plaintiffs sought to allocate only 50 percent to Section 5 claims. *See id*. This appears to be a valid method of allocating hours among claims, and Plaintiffs have substantiated such hours through clear documentation.

Concerning the SOS' claim that Plaintiffs achieved little success against her because the Settlement Agreement imposes minimal obligations on her, the Court questions whether this is even relevant, given the language of the Settlement Agreement. However, even assuming that degree of success is relevant, Plaintiffs have demonstrated significant success against the SOS as a result of their settlement. Prior to the Settlement Agreement, the SOS, by her own admission,

addressed NVRA compliance "largely reactively"; in other words, only when she became aware

that a problem existed.  Doc. 113 at 10.  Under the terms of the Settlement Agreement, the SOS

must undertake a more proactive approach, actively monitoring and evaluating compliance with

the Settlement Agreement and Section 5, and reporting compliance data directly to Plaintiffs.

She must develop a new comprehensive Section 5 compliance manual and a new NVRA

education and training program, as well as appointing a point person in her office to serve as the

State's NVRA Coordinator.  While the SOS contends that such changes are largely cosmetic and

not substantively different from what the language of the NVRA already requires, the SOS had

not previously taken responsibility for NVRA compliance, and the Settlement Agreement

contains an enforcement mechanism to ensure that she follows through with her commitments.

This represents a significant change in policy.  Indeed, in the two months following the signing

of the Settlement Agreement, New Mexico motor vehicle offices distributed 1,580 and 1,619

voter registration applications to persons who indicated they wished to register to vote, which

Plaintiffs contend represents a greater than thirteen-fold increase in registration activity at motor

vehicle offices compared to pre-suit levels.  *See* Doc. 116 at 8.

     5.    <u>Hours Already Awarded in Sanctions Order</u>

     In a Memorandum Opinion and Order dated September 9, 2010 [Doc. 114], Magistrate

Judge Svet granted sanctions against the SOS in an amount of $6,840 in attorneys' fees and

$1,987.09 in costs.  The sanctions award relates to the SOS' failure, on two occasions, to

produce a witness for one of Plaintiffs' Rule 30(b)(6) depositions.  To date, the SOS has not paid

this sanction.  The SOS has indicated to Plaintiffs that she believes payment of this sanction

should wait until after the Court rules on the instant fee application so that she could "handle

everything at once." *See* Ex. 3, attached to Doc. 116.  In addition, the SOS has indicated that she does not currently have adequate funds in her budget to pay the sanctions, so that the money will need to come from a special appropriation of the legislature during the current legislative session. *See id*.

Plaintiffs acknowledge that, because they are allocating half of counsel's hours related to direct interaction with the SOS to their Section 5 claim, half of the $6,840 in sanctions awarded for attorneys' fees should be deducted from their application for attorneys' fees in order to avoid a double recovery.[4]  However, Plaintiffs contend that it is premature to deduct any amount from Plaintiffs' fee application, because the sanctions award has not yet been paid and it is uncertain when payment will be made.  Therefore, Plaintiffs propose that their current fee application retain the full amount of hours sought, with the understanding that they will file an amended fee application reflecting the reduction of $3,420 if and when the SOS pays the earlier sanction. This appears to be overly complicated and unnecessary.  The earlier award against the SOS is a valid one, and is subject to payment, just as is the instant order.  The current award sought by Plaintiffs will therefore be reduced by the $3,420 that they have already been awarded.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Application for Attorneys' Fees from Defendant Herrera* [Doc. 103] is GRANTED.  Plaintiffs are awarded $37,754.38 in attorneys' fees related to their work on the Section 5 claim, $23,115 for time spent crafting the instant fee application, $3,008.05 for time spent on travel related to the Section 5 litigation, and $288.23 in

---

[4] Plaintiffs correctly note that the costs awarded in the sanctions order ($1,987.09) should not be deducted because the instant fee application does not request any costs.

New Mexico gross receipts tax on the recovery by Plaintiffs' local counsel, for a total of

$64,165.66.

_____

**UNITED STATES DISTRICT JUDGE**